**DOMINION RETAIL, INC., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.

Decided Sept. 10, 2003.

Todd S. Stewart, Harrisburg, for petitioner.

Elizabeth H. Barnes, Harrisburg, for respondent.

Charles E. Thomas, Jr., Harrisburg, for intervenor, Equitable Gas Company.

BEFORE: McGINLEY, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Dominion Retail, Inc., a natural gas supplier, appeals from the order of the Pennsylvania Public Utility Commission (PUC) which approved the fixed sales service rate (rate FSS) proposed by Equitable, a natural gas distribution company. The PUC determined that rate FSS does not have to be reconciled under Section 1307(f) of the Public Utility Code (Code), 66 Pa.C.S. § 1307(f), and is not subject to the standards of conduct for affiliated natural gas suppliers under Section 2209 of the Code, 66 Pa.C.S. § 2209. We affirm.

*Natural Gas Choice and Competition Act*

The Pennsylvania General Assembly passed the Natural Gas Choice and Competition Act [1] (Act) in June 1999, providing for the restructuring of the natural gas industry to allow all retail consumers to choose their natural gas supplier. In the past, gas was supplied and delivered by a single natural gas distribution company serving the area. The Act allows all gas customers the option of purchasing natural gas supply services from a natural gas supplier, just as customers currently purchase electricity from an electric supplier under the Electric Choice Program.

Regardless of whether consumers choose a new supplier, the natural gas distribution company will continue to provide distribution service, make repairs to its delivery system and respond to emergencies.

The Act required the PUC to promulgate regulations covering various topics as part of implementing natural gas choice. When possible, electric choice regulations were used as the template. The PUC formulated regulations dealing with such issues as safety and reliability,[2] customer information disclosure,[3] standards of conduct for changing suppliers [4] and the licensing of natural gas suppliers.[5]

A natural gas distribution company (NGDC) is a state regulated natural gas utility which owns the gas lines and equipment necessary to deliver natural gas to the consumer. A natural gas supplier (NGS) is an entity that sells or arranges to sell natural gas that is delivered to customers through the distribution lines of an NGDC. NGSs offering service in Pennsyl-

---

1. Public Utility Code, 66 Pa.C.S. §§ 2201–2212.

2. 52 Pa.Code §§ 69.11–69.19.

3. 52 Pa.Code §§ 62.71–62.80 provides for a disclosure requirement to ensure that consumers receive adequate and accurate information, consistent terminology, standard pricing units and standard billing format.

4. 52 Pa.Code §§ 59.91–59.99 sets forth standards for changing suppliers to ensure that a customer is not switched without consent. The customer contacts the natural gas supplier (NGS) to initiate a change. The NGS notifies the natural gas distribution company (NGDC) of the request and the NGDC confirms the request in a letter to the customer.

5. 52 Pa.Code §§ 62.101–62.114 provides that NGSs must demonstrate technical and financial fitness to provide service.

vania must be licensed by the Pennsylvania Public Utility Commission. In this case, Equitable is the NGDC. Dominion Retail is an NGS in Equitable's territory.

There are three parts to natural gas service: Commodity, Transmission and Distribution. Commodity refers to the natural gas from the gas well. The commodity is the basic natural gas supply service which is sold either by volume (ccf or Mcf) or heating value (dekatherms). Transmission involves moving the natural gas from the gas well through a series of underground pipelines called the interstate transportation system. The interstate transportation system delivers the natural gas to the NGDC. Distribution refers to the NGDC's sending the natural gas to consumer homes through underground pipelines. Under natural gas choice, the consumers choose the company that supplies their commodity and transmission.

The price of natural gas is based primarily on the volume of gas delivered to the consumer. It consists of three main parts: (1) commodity costs—the cost of the gas itself, (2) transmission costs—the cost to move the gas by pipeline from its source to the NGDC, and (3) distribution costs—the cost to bring the gas from the NGDC to the consumer. The NGDC passes the commodity cost to the consumer without any additional markup. Although increased commodity prices are passed along to consumers, residential customers enjoy some protection from sudden, severe price fluctuations. This is partially because residential bills reflect monthly average commodity prices rather than daily market prices. Also, transmission and distribution services make up a large fraction of residential bills. Competition under the act is for commodity service, not distribution.

## Procedural History

Equitable is an NGDC serving residential, commercial and industrial customers in southwestern Pennsylvania, West Virginia, and Kentucky. Pursuant to Section 1307(f) of the Code, Equitable submitted its purchased gas cost rate proposing therein a fixed sales service rate (rate FSS), establishing a new fixed rate offering for residential and small business customers. Through rate FSS, Equitable would provide residential and small business customers the option of locking in the price for natural gas service for one year. Rate FSS includes only the supply component.

The Office of the Consumer Advocate (OCA) filed a complaint regarding Equitable's proposal. The Office of Trial Staff (OTS), the Office of the Small Business Advocate (OSBA) and Dominion intervened. In June 2001, the parties filed a joint petition for partial settlement with the PUC addressing all issues except the rate FSS issue, which was litigated through written testimony. In July 2001, OTS and Equitable entered into a stipulation which implemented substantial modifications to the rate FSS proposal, resolving the rate FSS issue as between those two parties. In August 2001, the Administrative Law Judge (ALJ) issued a decision recommending approval of the joint petition for partial settlement and the approval of Equitable's rate FSS proposal as modified by the stipulation.

In September 2001, the PUC entered an order approving the joint petition for partial settlement and reserving decision on the rate FSS issue because the issues were not sufficiently developed. The PUC offered and Equitable accepted the option of participating in a collaborative where the parties would seek to develop parameters for implementing a rate FSS offering. The collaborative filed its final report with

the PUC. In the report, Equitable, OTS, OCA and OSBA agreed upon various modifications to the rate FSS proposal and identified two issues that had not yet been resolved, the timing of rate FSS offerings and the rate components to be included in rate FSS. In an opinion and order dated June 13, 2002, the PUC approved rate FSS.

Pertinent to this appeal are two features of rate FSS, both a part of the original proposal, and both ultimately accepted by all parties except Dominion. First, Dominion refused to agree that Equitable may offer rate FSS without reconciliation [6] of natural gas revenues collected and natural gas costs incurred. Second, Dominion refused to agree that the standards of conduct applicable to affiliated natural gas suppliers [7] would not apply to Equitable's rate FSS. Dominion contends that: (1) under Section 1307(f) of the Code, Equitable, as a natural gas distribution company, must reconcile all natural gas costs including those imbedded in a fixed rate mechanism like rate FSS, and (2) under Section 2209 of the Code, Equitable's provision of rate FSS is a marketing activity related to natural gas supply services by the marketing division/operation of a natural gas distribution company, and therefore Equitable must adhere to

the standards of conduct in providing rate FSS.

### Reconciliation

■ Under Section 1307(f)(1) of the Code, natural gas distributors with gross intrastate annual operating revenues in excess of $40,000,000 may file tariffs reflecting actual and projected increases or decreases in their natural gas costs.[8] Section 1307(f) provides for the automatic adjustment of rates associated with natural gas costs incurred. Utilities can adjust the natural gas cost portion of their rates on a periodic basis through out the year. Under Section 1307(f), the utility files a purchased gas cost rate based on the projected cost of gas from the utility's suppliers. *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission*, 81 Pa.Cmwlth. 148, 473 A.2d 1109, 1117 (1984). After approval of the estimate, the utility is authorized to collect those rates. The purchased gas cost mechanism allows a utility to reflect in customer charges and pass through to customers changes in the utility's cost of gas. *Id.* Annually, the PUC performs an audit of the experienced costs compared to the amount collected over the past 12 months. This audit permits experienced over or under collections attributable to the automatic rate adjustment mechanism to be

---

**6.** Reconciliation is a process whereby collected natural gas cost revenues and incurred natural gas cost expenses are compared and the difference is either refunded or charged to customers. It protects the natural gas distribution company from losses and prevents the natural gas distribution company from earning a profit on its natural gas cost purchases. Equitable's Brief at 5. The purpose of reconciliation is to ensure that the natural gas distribution company collects all of its natural gas costs—no more, no less—by truing-up at the end of each year. Natural gas distribution companies earn no profit and incur no losses for the gas supply function as long as their purchasing decisions comply with the least cost procurement requirements of 66

Pa.C.S. §§ 1317 and 1318. Dominion's brief at 7, n. 2.

**7.** Pursuant to 66 Pa.C.S. § 2209(i), an "affiliated natural gas supplier" includes marketing activities related to natural gas supply services by the marketing division or the marketing operation of a natural gas distribution company.

**8.** Natural gas costs include the direct costs paid by a natural gas distribution company for the purchase and delivery of natural gas to its system in order to supply its customers. 66 Pa.C.S. § 1307(h).

reconciled by the utility and its customers. *Id.* Through the reconciliation process, the PUC insures that a utility is made whole while protecting the ratepayer from overcharges resulting from the inaccuracy of the utility's estimates. *Id.* at 1115. The PUC is afforded broad discretion in determining which costs are natural gas costs for the purpose of recovery under Section 1307(f). *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission,* 137 Pa.Cmwlth. 621, 587 A.2d 54, 62 (1991).

The filing requirements for Section 1307(f) gas utilities are further elaborated upon in 52 Pa.Code § 53.64. This Section provides that once a year, a gas utility may file a tariff reflecting an increase or decrease in natural gas costs. Even if no new tariff is filed, the utility shall file for the reconciliation of amounts collected and expended during the prior year. Specifically, under 52 Pa.Code § 53.64(i), utilities shall file a statement specifying total revenues received under Section 1307(f) and total gas expenses incurred for the prior year. The PUC holds a hearing and directs payment of over collections to ratepayers and recovery of·under collections. The reconciliation proceedings are generally consolidated with the hearings on the utility's latest Section 1307(f) tariff filing.

Dominion argues that Section 1307(f) requires that Equitable's rate FSS be subject to annual reconciliation. Dominion argues that *all* natural gas costs, regardless of the rate mechanism through which they are charged, must be reconciled. Equitable argues that "nothing in Section 1307(f) of the Public Utility Code ... prevents Rate FSS gas costs from being excluded

from Equitable's Section 1307(f) PGC rate and from Equitable's automatic adjustment/sliding scale of rates under Section 1307(f) itself." Opinion of ALJ Porterfield, 8/2/01, at p. 20.

This argument was found persuasive by the ALJ as well as the PUC, which opined: "Further, no other provision in Section 1307 or elsewhere in the Public Utility Code mandates the annual reconciliation of PGC rates, particularly in the context of the very limited offering that has been developed by the parties during the collaborative process utilized in this proceeding." Opinion, 6/13/02, at p. 18.[9]

■ When the statutory language is not explicit a court may defer to an administrative agency's interpretation in order to ascertain legislative intent. *National Fuel Gas Distribution Corp. v. Pennsylvania Public Utility Commission,* 137 Pa. Cmwlth. 621, 587 A.2d 54, 62 (1991). We find that the PUC has reasonably interpreted the relevant provisions of the Code. There are no provisions in the statute or regulations that explicitly require the reconciliation of *all* purchased gas costs incurred by an NGDC. Reconciliation is provided for under Section 1307 in order to recoup or refund the over/under collections resulting from the automatic rate adjustment imbedded in the purchased gas cost rate and charged to the customer. Equitable's fixed rate option does not incorporate regular automatic adjustments because under rate FSS the purchased gas cost rate is fixed for a period of one year. Customers under rate FSS will agree to a fixed price over a period of time without reconciliation. We note that rate FSS is

---

**9.** The reference to "other provision" relates to Section 1307(f)(1)(ii) of the Code which provides that if the natural gas distribution company adjusts rates more frequently than quarterly, but not more frequently than monthly, then the natural gas distribution company

shall offer retail gas customers a fixed rate option which recovers natural gas costs over a 12 month period. This fixed rate option is subject to the annual reconciliation described above. This provision does not apply to Rate FSS.

being offered on a pilot basis for 2 years and will be subject to intense scrutiny. Consequently, we agree with the PUC that Equitable's rate FSS offering does not have to be reconciled.

### Standards of Conduct

■ Section 2209 of the Public Utility Code, 66 Pa.C.S. § 2209, provides for the PUC to establish standards of conduct governing the activities of and relationships between natural gas distribution companies and their affiliated natural gas suppliers and other natural gas suppliers. The purpose of these standards of conduct is to prevent anti-competitive or discriminatory conduct. According to Section 2209(i) an "affiliated natural gas supplier" includes an NGDC that engages in marketing activities related to natural gas supply services. However, that provision is subject to Section 2209(h), which provides that the PUC may develop and apply different standards of conduct to the natural gas distribution company's marketing activities related to natural gas supply service.

Dominion argues that in offering rate FSS, Equitable aims to compete with natural gas suppliers such as Dominion. Dominion asserts that Equitable's rate FSS offering is a "marketing operation" under Section 2209(i) of the Code and the same standards of conduct that apply to an "affiliated natural gas supplier" should apply to Equitable's provision of rate FSS. Dominion argues that rate FSS is a competitive supply service and, thus, Equitable's provision of rate FSS should be subject to the standards of conduct. In managing rate FSS, Equitable will use the same employees and the same customer information database it uses to provide service to its supplier of last resort customers. Dominion's primary concern is that Equitable will engage in anti-competitive conduct by refusing to switch customers on the rate FSS plan when they request it before their contract expires. Also, Equitable would discuss rate FSS with customers of other suppliers when those customers call regarding their distribution service. Equitable denies that it is offering rate FSS in competition with natural gas suppliers like Dominion and maintains that rate FSS is a competitively neutral distribution service.

The PUC held:

In considering this issue, we note that the ALJ had previously found that no evidence offered by the parties below had demonstrated that that Rate FSS would adversely affect NGSs. Since NGSs have greater flexibility to set natural gas prices, the ALJ did not view Rate FSS as anti-competitive or otherwise illegal. (R.D., pp. 23–24).

We are also not persuaded by Dominion's argument. The Commission believes the FSS offering is not intended to compete with the offerings of NGSs. Instead, it primarily gives customers another option as an alternative to the traditional PGC rate that fluctuates throughout the year and is reconciled at the conclusion of that year. It affords customers the opportunity to lock in a price for a year that they can then factor into their household budgets without the possibility of later adjustments. Moreover, we note that Equitable will only be making its FSS offer four times per year and will be doing so in a way that is transparent to all NGSs, making it possible for NGSs to react accordingly with a price that is more attractive to consumers. Contrary to the very strict parameters established during the collaborative for the pricing of Rate FSS. NGSs continue to enjoy complete flexibility in pricing their supply service.

Since Rate FSS is not intended to compete with suppliers such as Domin-

ion, we do not view the Standards of Conduct as being applicable to Equitable's provision of Rate FSS. Nevertheless, we agree with Dominion that when a customer calls Equitable to switch to an NGS, no efforts should be made by Equitable's employees to discuss Rate FSS or to delay a customer's request on the basis of its participation in Rate FSS. To that end, we direct Equitable to take measures designed to ensure that its customer service representatives involved in the switching process are not engaging in efforts that place Equitable at an advantage in attracting customers to Rate FSS. Rather, Equitable's educational initiatives relating to Rate FSS should be implemented through the process established by the collaborative.

■ We find no abuse of discretion in the PUC's applying different standards of conduct to Equitable's provision of FSS pursuant to subsection (h). The FSS of-fering is significantly different from the usual "affiliated natural gas supplier" and we believe the PUC appropriately addressed the competitive concerns of Dominion without unduly restricting an innovative program consistent with the spirit of the Act.

Accordingly, we affirm the order of the PUC.

### ORDER

AND NOW, this 10th day of September, 2003, the order of the Pennsylvania Public Utility Commission in the above captioned matter is hereby AFFIRMED.