**CONSUMER EDUCATION AND PROTECTIVE ASSOCIATION, Association of Community Organizations for Reform Now, Tenants' Action Group, Action Alliance of Senior Citizens of Greater Philadelphia, Petitioners**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2004.

Decided April 26, 2004.

---

Philip A. Bertocci, Philadelphia, for petitioners.

Shane Rooney, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

Petitioners (collectively CEPA)[1] petition for review of the order of the Public Utility Commission (Commission) that approved as modified Philadelphia Gas Works' (PGW) restructuring filing, which was filed pursuant to the Natural Gas Choice and Competition Act (Act), 66 Pa.C.S. §§ 2201–2212. On appeal, CEPA contends that the Commission erred: (1) in failing to specifically identify which provisions of PGW's initial tariff failed to comply with Chapter 56 of Title 52 of the Pennsylvania Code (Chapter 56); (2) in concluding that PGW did not need to maintain pre-Act practices that afforded greater consumer protections

1. Petitioners are Consumer Education and Protective Association (CEPA), Association of Community Organizations for Reform Now (ACORN), Tenants' Action Group (TAG), and Action Alliance of Senior Citizens of Greater Philadelphia (Action Alliance) (collectively CEPA). The Office of Consumer Advocate (OCA) has filed an *amicus* brief in support of petitioners and Philadelphia Gas Works (PGW) has intervened.

than those required by Chapter 56; and (3) in approving PGW's restructuring filing without requiring evidence that the changes in PGW's restoration and excavation charges were just and reasonable. After review, we quash CEPA's appeal on the ground that the order appealed from is interlocutory.

As this court has previously observed, the Act, which took effect on July 1, 2000, provided for the restructuring of the natural gas industry in order to allow retail consumers to choose their natural gas supplier. *Dominion Retail, Inc. v. Pa. Pub. Utility Comm'n*, 831 A.2d 810 (Pa.Cmwlth. 2003). The Act also brought city-owned natural gas distribution operations, such as PGW, under the jurisdiction of the Commission. Accordingly, pursuant to Section 2212(g) of the Act, 66 Pa.C.S. § 2212(g), PGW was required to and did submit a restructuring plan and initial gas service tariff with the Commission.[2] Various parties, including CEPA, filed formal complaints, asserting that the tariff failed to comply with the Act. The matter was as-

signed to an administrative law judge (ALJ) for hearings and the development of a record. One area of concern addressed during the hearings was whether PGW's tariff provisions regarding customer service and consumer protections complied with Chapter 56, which establishes standards for such areas as billing and payment, service interruption, termination and restoration of service, dispute resolution and maintenance of public information. CEPA took the position that not only did PGW's tariff fail to comply with Chapter 56, but in those instances where PGW historically provided greater consumer protections than those required by Chapter 56, the Act required that such protections be maintained in the new tariff.[3] PGW asserted that it had improved the level of its customer service and consumer protections by improving access to its call center, and improving billing and collection practices and employee training. It also asserted that it intended to fully comply with Chapter 56 going forward and that to require it to maintain prior tariff provisions affording greater protections than

---

**2.** According to the Commission, PGW filed both a gas service tariff and a gas supply tariff. Only the gas service tariff is at issue here.

**3.** Section 2203 of the Act, entitled "Standards for restructuring of natural gas utility industry," provides that, "[t]he commission shall, at a minimum, continue the level and nature of the consumer protections, policies and services within its jurisdiction that are in existence as of the effective date of this chapter to assist low-income retail gas customers to afford natural gas services." 66 Pa.C.S. § 2203(7). In addition, Section 2206, entitled "Consumer protections and customer service," provides that:

(a) Quality.—A natural gas distribution company shall be responsible for customer service functions consistent with the orders and regulations of the commission, including, but not limited to, meter reading, installation, testing and maintenance and

emergency response for all customers, and complaint resolution and collections related to the service provided by the natural gas distribution company. Customer service and consumer protections and policies for retail gas customers shall, at a minimum, be maintained at the same level of quality under retail competition as in existence on the effective date of this chapter.
66 Pa.C.S. § 2206(a). In its brief, CEPA identifies the various ways that it believes the new tariff provides less protection to customers. For instance, CEPA notes that PGW's prior tariff provided a 14–day written notice period prior to the termination of service in addition to a reminder notice. The proposed tariff reduced the notice period to 10 days and eliminated the reminder notice. The prior tariff also required that two attempts be made to contact the customer seven days after the initial termination notice was issued and 72 hours prior to termination. The proposed tariff eliminates one of those contact requirements.

under Chapter 56 would impose a different, more stringent standard than that required of other (public) utilities. While noting that the Act required that "[c]ustomer service and consumer protections [4] and policies for retail gas customers shall, at a minimum, be maintained at the same level of quality under retail competition as in existence on the effective date of [the Act]," [5] the ALJ held, among other things, that the Act did not require PGW to retain specific prior service provisions in order to maintain the same level of consumer protection. Notwithstanding this conclusion, the ALJ concluded that PGW's tariff failed to comply fully with Chapter 56 and noted that a promise to comply was insufficient. The ALJ recommended that the Commission form a collaborative group to ensure that PGW produced a compliant tariff. The ALJ did not make any specific findings regarding which tariff provisions failed to comply with the Act or regulations. The ALJ ultimately approved PGW's restructuring filing with modifications, and directed, among other things, that PGW comply with the Chapter 56 regulations and the various "generic orders" issued by the Commission.

The Commission affirmed PGW's restructuring filing with modifications, though differing in some instances from the ALJ's proposed decision and order. With respect to the specific issues raised on appeal, the Commission stated as follows:

The Act requires PGW to convert its accounting, billing, collection, and other systems and procedures to comply with the requirements applicable to jurisdictional gas companies and the applicable rules, regulations and orders of the Commission. 66 Pa.C.S. § 2212(h)(1). PGW must meet the Commission's residential utility service requirements of Chapter 56 and must maintain existing consumer protections and policies at the same level of quality....

. . . .

CEPA believes that PGW's proposed tariff clearly does not preserve the required levels of consumer protections, and the Commission should specifically identify the provisions that are not in compliance and should order PGW to file a [compliant] tariff.

. . . .

Upon review of the record on this issue, the ALJ's recommendation for a collaborative is denied.... [For the reasons stated,] [t]here is no need to hold a further collaborative on this issue. On the effective date of this Opinion and Order, Chapter 56 will be in effect and any PGW tariff provision that does not meet the standards of Chapter 56 is void. The compliance filing resulting from this Opinion and Order is the appropriate time for PGW to revise its tariffs to conform to Chapter 56.

Opinion at 36, 38–39 (March 31, 2003).[6] The Commission adopted the ALJ's order as modified. In doing so, the Commission ordered PGW to, among other things, com-

---

4. The Act defines "consumer protection" as:

The standards, practices and service protections for retail gas customers, including those provided for in 52 Pa.Code Ch. 56 (relating to standards and billing practices for residential utility service), as well as applicable Federal and State debt/credit collection statutes and any regulations or orders of the commission that provide such protections, as may be modified by the commission from time to time.
66 Pa.C.S. § 2202.

5. 66 Pa.C.S. § 2206(a).

6. One Commissioner dissented regarding the level of customer service and consumer protections required to be maintained under the Act.

ply with the Chapter 56 regulations and file a revised tariff, consistent with its order. OCA then filed a petition for reconsideration and clarification. According to the Commission, OCA asserted that PGW's new tariff represented a reduction in consumer protection. The Commission then held as follows:

> [W]e agree with PGW that it is the level of quality of services and protections that must be maintained per the Act. The Act does not require every specific pre-Act practice to remain in force, so long as the level of quality of services and consumer protections are not reduced. We also agree with the OCA that gas distribution companies may, but are not required to, provide protections and services that exceed Chapter 56 requirements. As we stated in the Restructuring Order, we expect PGW to comply with the Act and Chapter 56 in its compliance filing. To the extent that any party that believes PGW's compliance filing does not satisfy that directive, [they] may address specific tariff provisions in the context of that filing.

Opinion at 7 (June 30, 2003).

CEPA then filed the instant petition for review raising the previously mentioned contentions. In addition to responding to the merits of CEPA's arguments, the Commission contends that the restructuring order that CEPA has appealed is not a final, appealable order regarding PGW's proposed tariff's compliance with Chapter 56 because it expressly ordered the parties to address specific tariff issues in the compliance proceedings. As the Commission notes in its appellate brief[7] (and CEPA does not dispute), PGW submitted a revised tariff on May 15, 2003, and comments and exceptions were filed by CEPA and others in response thereto, causing PGW to submit another compliance filing subject to further proceedings, including an appeal to this court. We agree.

■ Pursuant to Section 763 of the Judicial Code, this court has exclusive jurisdiction over appeals taken from final orders of government agencies. 42 Pa.C.S. § 763. Pennsylvania Rule of Appellate Procedure 341 defines a final order as any order that:

> (1) disposes of all claims or of all parties; or
>
> (2) any order that is expressly defined as a final order by statute; or
>
> (3) any order entered as a final order pursuant to subsection (c) of this rule.[8]

---

7. The Commission avers that on May 15, 2003, PGW filed a tariff reflecting the modifications required by the Commission in its order approving PGW's restructuring plan. Although the tariff is not part of the record, it is attached to the Commission's brief. According to the Commission, comments and exceptions to the revised tariff were filed and on August 29, 2003, PGW filed a new tariff in response to those comments and exceptions. This tariff was approved by the Commission subject to certain modifications. The next revised tariff was filed on November 10, 2003. CEPA did not dispute the occurrence of these subsequent events at oral argument. Thus, it is clear that the tariff currently in effect is not the tariff that is the subject of the instant petition for review as that tariff has since been revised.

8. Subsection (c) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order....

Pa. R.A.P. 341(b) (footnote added). As noted by the Commission, its order did not dispose of all claims. Rather, the Commission directed that all contentions regarding the tariff's compliance with Chapter 56 be addressed in the context of the compliance filing.

 Even without regard to the Rule, "[t]he finality of an order is a judicial conclusion which results from practical rather than technical interpretation, taking into account the order's ramifications." *Popowsky v. Pa. Pub. Utility Comm'n,* 166 Pa.Cmwlth. 690, 647 A.2d 302, 305 (1994). In this regard, we have observed that it is "[a]n indication that an order is not final [where there] is conditional language and a failure to advise that appeal rights must be exercised." *Parkesburg Borough v. Pa. Pub. Utility Comm'n,* 681 A.2d 872, 875 (Pa.Cmwlth.1996), quoting *Popowsky,* 647 A.2d at 305. Thus, since the Commission specifically advised that the tariff's compliance with Chapter 56 would be addressed in the context of PGW's compliance filing, the order is not a final appealable order.

CEPA argues that its ability to challenge the tariff in the compliance proceeding is more restricted and less effective than asserting its challenges in the restructuring proceedings because in the restructuring proceedings any perceived variance from the Chapter 56 requirements may be challenged, while in the compliance proceedings the only issue is whether PGW has complied with the Commission's restructuring order. We can discern no prejudice to CEPA as the Commission broadly declared that any tariff provisions inconsistent with Chapter 56 were void and ordered a compliant tariff to be submitted, thereby allowing for unrestricted challenges to the revised tariff in the compliance proceedings. Moreover, if the procedure utilized by the Commission in resolving all tariff issues in the compliance proceedings has somehow deprived CEPA of a full and fair opportunity to challenge the validity of PGW's tariff, that issue is fully preserved for appeal from that final order.

 For the foregoing reasons, the appeal is quashed.[9]

### ORDER

AND NOW, this 26th day of April, 2004, the Petition for Review filed by Petitioners in the above-captioned matter is hereby QUASHED.

---

**9.** We note that had this appeal not been quashed as interlocutory, it could have properly been dismissed as moot. *Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591 (2002), *Musheno v. Dep't of Pub. Welfare,* 829 A.2d 1228 (Pa.Cmwlth.2003). In general, an actual case or controversy must exist at all stages of the review process, not merely when the case is initiated. *In re Gross,* 476 Pa. 203, 382 A.2d 116 (1978). As the Superior Court aptly opined:

> An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

*In re D.A.,* 801 A.2d 614, 616 (Pa.Super.2002) (quotations and citations omitted). Here, PGW's submission of a revised tariff, the entry of a compliance order (which is the subject of a separate petition for review now before this court) and the submission of a new tariff in response to the compliance order, renders the instant petition for review moot. Any order that we would enter would be meaningless, as the tariff underlying the instant petition is no longer in effect.